## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff/Respondent, | § | |
| | § | CR. No. C-3:06-008-2 |
| v. | § | (C.A. No. C-3:11-292) |
| | § | |
| KEELON JMAR SENEGAL, | § | |
| | § | |
| Defendant/Movant. | § | |

## MEMORANDUM OPINION AND ORDER DENYING MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255 DENYING CERTIFICATE OF APPEALABILITY, GRANTING MOTION TO AMEND, AND ORDER DENYING MOTION FOR EVIDENTIARY HEARING

Pending before the Court is Keelon Jmar Senegal's (Senegal) motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255. D.E. 382, along with his Memorandum of Law.[1] D.E. 382, 383. Also before the Court are the government's response, trial counsel's affidavit, Senegal's reply with additional evidence, his motion to amend his § 2255 motion and for an evidentiary hearing. For the reasons stated herein, the Court grants Senegal's motion to amend, denies his motion for an evidentiary hearing, denies Senegal's § 2255 motion and also denies him a Certificate of Appealability.

## I.  JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

---

[1]   Docket entry references are to the criminal case.

## II.  BACKGROUND

**A.  Procedural History**

John Franklin, Keelon Senegal, Arthur Lee Winn, and Broderick Wade York were each the subject of federal criminal complaints regarding the August 11, 2005, robbery of University Federal Credit Union in Galveston, Texas. Each was arrested or otherwise transferred into federal custody the same month. The men made their initial appearance in federal court shortly after their arrests and were appointed counsel. Each defendant was detained without bond pending trial.

All four defendants were indicted on April 10, 2006, in a multiple count indictment that charged them with aiding and abetting each other in the robbery of University Federal Credit Union, with using or brandishing a weapon during the robbery and John Franklin and Arthur Lee Winn, Jr., were also charged with the robbery of Coastal Community Federal Credit Union and using or brandishing a firearm. In addition, the indictment gave notice of the forfeiture of the firearms used.

Franklin and Winn each pled guilty in the first part of 2006 to the August 2005 robbery of the University Federal Credit Union with a firearm, aiding and abetting, and to two counts of using and carrying a firearm during a crime of violence and aiding and abetting. D.E. 298, 300.

The second superseding indictment charged Senegal and York with conspiracy and with the August 2005 robbery of the University Federal Credit Union with a firearm, aiding

and abetting,[2] and two counts of using and carrying a firearm during a crime of violence[3] and aiding and abetting, but added additional felon in possession and witness tampering crimes.[4] D.E. 108. Senegal and York were arraigned on the second superseding indictment on December 15, 2006.

A joint jury trial for Senegal and York began in July 2007 and lasted a week. At the conclusion of trial, both Senegal and York were convicted on all counts. D.E. 178.

Senegal was sentenced to: 60 months on Count One, 300 months on Count Two, Life on Count Three, 360 months on Count Four, 240 months on Count 5, 240 months on Count Six, Life on Count Seven to run consecutive to all other counts, and 360 months on Count Eight. Counts One, Two, Four through Six, and Count Eight all run concurrently. Count Three runs consecutively to the others and is followed by Count Seven which runs consecutively to Count Three. D.E. 294.

Senegal appealed to the Fifth Circuit Court of Appeals. The Fifth Circuit affirmed his conviction and sentence in March 2010. United States v. Senegal, 371 Fed. App'x. 494 (5th Cir., Mar. 23, 2010) (per curiam) (designated unpublished). Senegal filed a motion for new

---

[2]   Conspiracy to commit bank robbery was charged pursuant to 18 U.S.C. § 371. Bank robbery and aiding and abetting bank robbery was charged pursuant to 18 U.S.C. §§ 2113(a) and (d), 2.

[3]   Counts Three and Seven charged brandishing and using a firearm to commit a crime of violence and aiding and abetting in violation of 18 U.S.C. §§ 924(c)(1)(A), 2.

[4]   Counts Five and Six charged witness tampering and aiding and abetting in violation o f 18 U.S.C. §§ 1512 (a)(1)(C),(k), and 2. Counts Seven and Eight charged felon in possession of a firearm and aiding and abetting pursuant to 18 U.S.C.  §§ 924(c)(1)(A), (a)(2), (g)(1), (e) and 2.

3

trial in the district court after the Fifth Circuit affirmed his conviction and sentence. This Court denied the motion. Senegal timely filed the present motion.

## B.    Factual Background

The Fifth Circuit Court of Appeals summarized the evidence as follows:

### 1. *The University Federal Credit Union Robbery*

In July 2005, Arthur Winn and John Franklin successfully robbed the Coastal County Credit Union. Winn and Franklin decided to try their luck again, and set their sights on the University Federal Credit Union ("UFCU") in Galveston, Texas. They recruited Senegal, York, and York's cousin, DeWayne Lekeith "Ki–Ki" Joseph, to assist with the heist, although Joseph later backed out of the scheme.

The four decided that Winn would steal two cars and serve as the getaway driver, Franklin would hold open the door to the bank, and Senegal and York would enter the bank to carry out the robbery. In August 2005, the four drove a stolen Chevrolet Suburban to the UFCU and commenced the robbery according to their assigned roles. Senegal and York obtained almost $10,000 from the bank tellers, and then ran back to the Suburban.

Once inside the Suburban, a dye pack that one of the tellers had slipped into the money bag exploded. At that moment, the Suburban stopped running. The four abandoned the Suburban and continued their escape in a stolen Buick that Winn had parked nearby as a backup getaway vehicle.

Because they feared that someone had followed them, they decided to ditch the Buick and continue fleeing in Franklin's personal Chevrolet Impala. The four parked the Buick close to where Franklin had left his car, and waited for him to retrieve it and return for them. Franklin, still scared that someone had followed him, never picked up the others.

While Winn, Senegal, and York waited for Franklin, Winn saw Tony Mason drive past. Winn, who knew Mason from his days in a street gang, flagged Mason, and Mason agreed to drive the three to Winn's mother's house. While en route, York began to discuss the botched robbery, and Winn quickly instructed him to be quiet. Upon arriving at Winn's mother's house, Senegal gave Mason a handful of money from the UFCU robbery.

4

## 2. *Senegal and York's Possession of a Lorcin Pistol*

A few days after the UFCU robbery, Senegal told his cousin, Jasmine Epps, about his involvement. Around this time, Epps witnessed Senegal with a silver gun while visiting Senegal's girlfriend, Tesse Rolland. Epps saw Senegal and Rolland playing with the firearm before Rolland took the gun into her bedroom. Rolland testified to the grand jury that she saw York give the gun to Senegal. At trial, however, Rolland recanted and testified that she knew nothing about the weapon.

Police officers seized the firearm while arresting Epps at Rolland's apartment sometime later for an unrelated crime, and identified the weapon as a Lorcin pistol. Upon her release, Epps called Senegal at Rolland's apartment, at which point Senegal cursed and shouted at Epps because he did not want her to tell the police about his participation in the UFCU robbery. Epps later identified the recovered Lorcin pistol as the same one she observed Senegal and Rolland playing with shortly after the UFCU robbery.

## 3. *The Attempted Murder of Tony Mason*

York began to fear that the police would associate him with the UFCU robbery and decided to seek help from Joseph. York discussed the botched robbery with Joseph, detailing the various ways he believed the police could tie him and the others to the crime. Later, Senegal and York heard that the police had arrested Mason for traffic warrants. Fearing that Mason would implicate them in the UFCU robbery, Senegal and York contacted Joseph again to discuss killing Mason.

In late September 2005, Joseph, Senegal, and York drove a stolen Jeep Cherokee while searching for drug dealers to rob. According to Joseph, at some point during the drive, York started to get upset with him. Joseph asked that the two let him out of the Jeep, and Senegal and York complied.

After leaving Joseph, Senegal and York drove to Mason's house, donning bandanas over their faces. Senegal, with his gun drawn, approached Mason while Mason worked on his car. When he attempted to fire, however, his gun jammed. York decided to try with his weapon, and successfully shot Mason once. Mason fled into the courtyard of his apartment building, but fell after a short distance. York approached Mason to shoot him a second time, but his gun also jammed before he could fire another round. Mason stood up and continued his escape, and eventually the paramedics found him. Mason remained in a coma for nearly a month, but survived.

4. *The Robbery of Adrian DeVault*

Later that evening, Senegal and York approached Adrian DeVault while DeVault sat in his car in an apartment parking lot. They pulled their weapons and demanded DeVault's valuables, securing a chain, a black Movado watch, a white gold diamond bracelet, and about $350 in cash. They also ordered DeVault out of the car and tried to steal it, but failed when they could not get the car into gear. DeVault returned fifteen minutes later to find his car where he had left it, still running with the keys in the ignition. DeVault drove back to his house, and upon arrival, found a .38 revolver that one of the robbers had left inside the vehicle.

DeVault did not report the robbery to the police, but a detective contacted him about a month later. DeVault corroborated the detective's account of the robbery, and turned over the firearm. At trial, Winn identified the firearm as the same one that York carried during the UFCU robbery, and a Texas Department of Public Safety expert testified that the bullet extracted from Mason's body matched the firearm recovered from DeVault's car.

The morning after the Mason shooting and the DeVault robbery, York met with Joseph. During their conversation, York reported the successful robbery and the unsuccessful attempt on Mason's life. York also showed Joseph the black Movado watch they had stolen.

A few days after the robbery, one of the robbers pawned a black Movado watch and a gold bracelet. Later, DeVault accompanied a law enforcement officer to the pawn shop and identified the pawned items as those stolen from him. An employee of the pawn shop produced pawn slips for the items with Senegal's signature.

Some time after the Mason shooting, Winn and York ended up in the same jail cell. While there, York discussed the Mason shooting with Winn in great detail, and stated that he shot Mason with the same .38 revolver he had used in the UFCU robbery. A few days after the initial conversation, York told Winn about the DeVault robbery, describing their failure to steal the car and how they inadvertently left a gun in the vehicle.

5. *The Texas City Arrest of York and Joseph*

In early October 2005, Texas City Police officers arrested York and Joseph in a stolen Buick. Inside the car, officers found a .357 bulldog snub nose revolver that belonged to York, and a Colt .45 firearm that belonged to

Senegal. At trial, Joseph identified Senegal's Colt .45 as the same weapon that jammed during the unsuccessful attempt on Mason's life.

Senegal, 371 Fed. App'x. at 496-98.

## III.  MOVANT'S CLAIMS

Senegal raises multiple claims of ineffective assistance of counsel based upon counsel's failure:

> 1) to object to the jury instructions that constructively amended Counts Two and Three of the indictment,

> 2) to argue constructive amendment on appeal,

> 3) to file a motion to suppress the gun found in Jasmine Epps' apartment,

> 4) to investigate or cross-examine Tony Mason on his mental illness, and

> 5) to argue that the Court exceeded the statutory maximum sentence under 18 U.S.C. § 924(c).

Finally, Senegal claims that Judge Kent's failure to recuse himself violated Senegal's Due Process rights.

## IV.  ANALYSIS

### A.    28 U.S.C. § 2255

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside, or correct his sentence: 1) constitutional issues, 2) challenges to the district court's jurisdiction to impose the sentence, 3) challenges to the length of a sentence in excess of the statutory maximum, and 4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range

7

of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992).

Furthermore, a defendant may not raise an issue for the first time on collateral review without first showing "cause" for the procedural default, and "actual prejudice" resulting from the error. United States v. Pierce, 959 F.2d 1297, 1301 (5th Cir. 1992). The "cause and prejudice" standard presents a "significantly higher hurdle" than the plain error standard applied on direct appeal. United States v. Frady, 456 U.S. 152, 166 (1982). "[A] collateral challenge may not do service for an appeal." Id. at 165.

## B. Standard for Claims of Ineffective Assistance of Counsel

Generally, an ineffective assistance claim presented in a § 2255 motion is properly analyzed under the two-prong analysis set forth in Strickland v. Washington, 466 U.S. 668 (1984). United States v. Willis, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial. Id. This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. United States v. Dovalina, 262 F.3d 472, 474-75 (5th Cir. 2001). To show that his attorney's performance at sentencing in a noncapital case was prejudicial under Strickland, the movant must demonstrate that counsel's error led to an increase in the length of his imprisonment. Glover v. United States, 531 U.S. 198, 203 (2001); United States v. Herrera, 412 F.3d 577, 581 (2005).

8

If the movant fails to prove one prong, it is not necessary to analyze the other. Armstead v. Scott, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

"The entitlement to effective assistance does not end when the sentence is imposed, but extends to one's first appeal of right." United States v. Williamson, 183 F.3d 458, 462 (5th Cir. 1999) (citing Evitts v. Lucey, 469 U.S. 387, 394 (1985); Green v. Johnson, 160 F.3d 1029, 1043 (5th Cir.1998)). Counsel's appellate performance is judged under the same Strickland, standard applicable to trial performance. 466 U.S. 668 (1984). "When a claim of ineffective assistance of counsel is premised on counsel's failure to raise an issue on appeal, 'the prejudice prong first requires a showing that [the Fifth Circuit] would have afforded relief on appeal.'" United States v. Reinhart, 357 F.3d 521, 530 (5th Cir. 2004) (quoting United States v. Phillips, 210 F.3d 345, 350 (5th Cir. 2000)).

## C.    Alleged Ineffective Assistance of Counsel

### 1. *Counsel's failure to object to the jury charge*

Senegal claims that the jury charge constructively amended the indictment on Counts Two and Three. He further claims that his trial and appellate counsel were ineffective because trial counsel did not object to the constructive amendment and appellate counsel failed to raise the issue on appeal. Count Two is the charge of bank robbery and Count Three is brandishing and using a firearm in the commission of a crime of violence. D.E. 108, pp. 5-6.

9

Count Two of the Second Superseding Indictment charged Senegal and York with "using force, violence and intimidation to take . . . money. . . [from] the University Federal Credit Union, 428 Avenue E, Galveston, Texas, a credit union whose accounts were then insured by the *National Credit Union Administration Board* . . . ." D.E. 108 at p. 5, Count Two (emphasis added).

The jury was instructed however that element two of Count Two, bank robbery was, "That the money belonged to or was in possession of a *federally insured bank* at the time of the taking." D.E. 172 at p. 16 (emphasis added). The charge further explained, "a '*federally insured bank' means any bank with deposits insured by the Federal Deposit Insurance Corporation*." Id. at pp. 16-17 (emphasis added).

To commit a federal "bank robbery," the institution robbed must be a bank, credit union, or savings and loan as defined by 18 U.S.C. § 2113. Proof of the institutional status of the affected financial institution is an essential element of the crime of bank robbery. United States v. Slovacek, 867 F.2d 842, 845 (5th Cir. 1989); United States v. Trevino, 720 F.2d 395, 400 (5th Cir. 1983) (reversing conviction after government failed to prove that the bank robbed was federally insured as required by § 2113).

Proof at trial showed the University Federal Credit Union was federally insured by the NCUA, National Credit Union Administration. 18 U.S.C. § 2113(g). A copy of the certificate issued by the NCUA was admitted at trial. D.E. 325, p. 142. No other evidence was elicited during the trial that described a financial institution robbery involving York or Senegal and no evidence referenced any other insured status of University Federal Credit Union. Additionally, the jury instructions informed the jurors that Senegal and York were

not on trial "for any act, conduct, or offense not alleged in the indictment." D.E. 172, p. 12. The Verdict Form also referenced the indictment, "On Count Two of the Indictment, we, the jury unanimously find the Defendant, Keelon Jmar Senegal guilty." D.E. 178, p. 1.

Senegal complains that the jury charge allowed the jury to decide an element of the bank robbery charge that was different than alleged in the indictment by the references to "bank" and "Federal Deposit Insurance Corporation," rather than credit union and NCUA. He complains he was harmed by the failure of counsel at trial or on appeal to raise the issue. The Court finds that there was no harm from the error in the jury charge. Senegal was convicted of the crime alleged in the Indictment based upon uncontroverted evidence that the University Federal Credit Union was federally insured by the NCUA.

Trial counsel should have noticed the error in the jury charge and objected. Had counsel objected to the failure of the jury charge to match the indictment and proof, the district court would have corrected the jury charge. Senegal would have been convicted based upon the evidence at trial. There is no harm to Senegal from trial counsel's failure to object to the error in the charge.

Senegal further claims that had appellate counsel challenged the constructive amendment on appeal, the Fifth Circuit Court of Appeals would have reversed his conviction on Count Two pursuant to Stirone v. United States, 361 U.S. 212 (1967) and United States v. Fitzpatrick, 581 F.2d 1221, 1223 (5th Cir. 1978) (per curiam). In both cases, the courts held that a constructive amendment of the indictment resulted in *per se* error and reversed the convictions on plain error review.

11

In <u>Stirone</u>, a Hobbs Act case, the indictment charged Stirone unlawfully obstructed interstate commerce by extortion and by threats regarding a contract to supply ready mixed concrete. 361 U.S. at 271. At trial the government also proved Stirone interfered with interstate commerce regarding a steel shipment and the jury charge permitted the jury to find Stirone guilty of a violation of the Hobbs Act based upon either conduct, even though the steel interference was not charged in the indictment. The Supreme Court reversed and remanded finding the evidence and jury charge regarding the steel issue impermissibly amended the indictment. <u>Id.</u> at 273-74.

<u>Fitzpatrick</u> was a bank robbery case in which the indictment alleged federally insured status as the basis for federal jurisdiction. <u>Id.</u> at 1222. At trial, the government proved that the credit union was federally insured as charged in the indictment, but the jury charge allowed conviction on the ground that the credit union had a federal charter, a wholly different basis for federal jurisdiction, one that was neither charged nor proven. <u>Id.</u> at 1223. Because the indictment was constructively amended, the Fifth Circuit reversed.

The government points to the evidence at trial and claims that the error in the charge was one of form and not substance. It cites <u>United States v. Slovacek</u>, 867 F.2d 842, 846 (5th Cir. 1989), in support of its position. The district court in <u>Slovacek</u> charged the jury that it could find the jurisdictional element by finding that the bank was a member of the Federal Reserve System, was organized under the laws of the United States or insured by the Federal Deposit Insurance Corporation. <u>Id.</u> at 845. The indictment charged that the bank was insured by the FDIC. <u>Id.</u> at 847. The evidence at trial established that the bank was insured by the FDIC and that it was state chartered bank. No objection was made at trial to the jury charge.

12

The Fifth Circuit did not find constructive amendment and declined to reverse under plain error. Id. at 848-49.

If appellate counsel had raised the issue, the Fifth Circuit would have reviewed the claim of constructive amendment, raised for the first time on appeal, pursuant to the plain error standard. United States v. Olano, 507 U.S. 725, 735-36 (1993); United States v. Broadnax, 601 F.3d 336, 340 (5th Cir. 2010) (applying plain error review to unobjected to claim of constructive amendment of indictment ); United States v. Hoover, 467 F.3d 496, 498 (5th Cir. 2006).

In Puckett v. United States, 556 U.S. 129, 135 (2009), and Olano, 507 U.S. at 736, the Supreme Court emphasized the discretionary exercise of a circuit court's power to correct error. "The Court of Appeals should correct a plain forfeited error affecting substantial rights if the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" Puckett, 556 U.S. at 135 (quoting United States v. Atkinson, 297 U.S. 157, 160 (1936)). The Olano Court declined to reverse under the plain error standard, after finding no prejudice shown by the defendant. 507 U.S. at 741.

Similarly, the Fifth Circuit under plain error review has declined to reverse several convictions in which defendants alleged constructive amendment on the grounds that the error did not seriously affect the fairness, integrity, or public reputation of judicial proceedings. United States v. Bohuchot, 625 F.3d 892, 899-900 (5th Cir. 2010); United States v. Lopez, 392 Fed. App'x. 245, 249-50 (5th Cir., Aug. 3, 2010) (plain error did not require reversal)  (per curiam) (designated unpublished).

13

In <u>Bohuchot</u>, a bribery and money laundering conspiracy, the defendants claimed for the first time on appeal that their indictment was constructively amended by the government's evidence and argument. 625 F.3d at 895. The Fifth Circuit assumed constructive amendment, but held the defendant's substantial rights were not affected because the necessary evidence of corrupt intent was strong. <u>Id.</u> at 899. Similarly, in <u>Lopez</u>, the indictment charged Lopez with principal liability but not aiding and abetting. The jury charge included an instruction on aiding and abetting to which Lopez' counsel did not object. The Fifth Circuit declined to reverse on the grounds that the evidence against Lopez as a principal was "overwhelming" and the government consistently argued during trial that he was guilty as a principal. <u>Id.</u> at 250-51. The Court held that Lopez' conviction under the erroneous jury charge did not "seriously affect the fairness, integrity or public reputation of judicial proceedings" and declined to exercise its discretion to correct any error on that point. <u>Id.</u> at 251.

In contrast, the Fifth Circuit reversed in a case involving constructive amendment when a defendant was charged with making a single false statement, but the evidence at trial and the jury instructions allowed the jury to convict on his making a different false statement. <u>Hoover</u>, 467 F.3d at 502.

Senegal was convicted consistent with the allegations in the indictment. There was no evidence at trial establishing the jurisdictional fact other than that charged in the indictment. While the judge and counsel missed the proper charge, the jury did not. If there had been an amendment, there was no evidence to support it.

14

This Court predicts the Fifth Circuit Court of Appeals would decline to reverse Senegal's conviction because the error in this case did not "seriously affect the fairness, integrity, or public reputation of the judicial proceedings." Senegal can prove no prejudice from counsel's failure to raise the issue either at trial or on appeal. He has not met his burden to demonstrate ineffective assistance of counsel on this issue. <u>Armstead</u>, 37 F.3d at 210.

Although Senegal also claims constructive amendment by the jury charge in Count Three, he does not specify in what way the charge constructively amended the indictment. His claim as to Count Three is conclusory based upon its failure to provide specific facts. Conclusory allegations on critical issues in a § 2255 proceeding are insufficient to raise a constitutional issue. <u>United States v. Woods</u>, 870 F.2d 285, 288 n. 3 (5th Cir.1989); <u>see also</u> <u>United States v. Jones</u>, 614 F.2d 80, 82 (5th Cir. 1980) (failure of movant to state specific facts, "is insufficient to state a constitutional claim.").

2.  *Counsel's failure to file a motion to suppress*

The police recovered a Lorcin .380 from Tesse Rolland's apartment in Texas City. Senegal was convicted of possession of it on Count Four of the Second Superseding Indictment. D.E. 294. Senegal claims that counsel failed to properly investigate the facts and counsel's failure to file a motion to suppress the gun constituted ineffective assistance of counsel.

Filing a motion to suppress is considered part of trial strategy. <u>Murray v. Maggie</u>, 736 F.2d 279, 283 (5th Cir. 1984) ("The filing of pretrial motions falls squarely within the ambit of trial strategy."). Counsel is required "to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful." <u>United States v. Phillips</u>, 210

15

F.3d 345, 348 (5th Cir. 2000) (quoting United States v. Williamson, 183 F.3d 458, 462–63 (5th Cir. 1999)). Although "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable, . . . . strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Strickland, 466 U.S. at 690-91.

This Court begins with the presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690. "Given the almost infinite variety of possible trial techniques and tactics available to counsel, this Circuit is careful not to second guess legitimate strategic choices." Yohey v. Collins, 985 F.2d 222, 228 (5th Cir. 1993).

The record evidence is that the Texas City police recovered the gun after arresting Jasmine Epps at Rolland's apartment pursuant to a federal warrant in an unrelated investigation. Davette Simmons was at the apartment and gave consent to search the apartment.[5] However, Senegal provided an affidavit from Simmons with his motion to vacate in which she claims she told the police that she did not live in the apartment and could not give consent to search. She claims that she never willingly gave consent to the search. D.E. 383-2.

Counsel's affidavit states that he considered moving to suppress the Lorcin .380 recovered in the search of Rolland's apartment, but he believed to succeed on the motion he

---

[5] Epps and Simmons were friends and relatives of Rolland and Senegal who were present at the apartment at the time of the search.

would have to call Jasmine Epps, Tesse Rolland, Davette Simmons, or Keelon Senegal as witnesses to testify. Counsel also believed that although Rolland had testified unfavorably to Senegal at the grand jury, she was becoming less cooperative with the government. Epps would have corroborated that Simmons lived at Rolland's apartment at least part of the time, which arguably provided Simmons with standing to consent to search. Counsel asserts that after considering the police testimony contradicting Simmons, the weakness of the suppression issue,[6] and the problems with obtaining witness testimony that would not negatively affect the defense case at trial, he decided to forego the suppression motion.

Senegal further claims that counsel failed to conduct the necessary investigation before making a decision not to file a motion to suppress, but the evidence does not support his claim. Defense Counsel advised the Magistrate Judge during a hearing that he was investigating the suppression issue and requested additional funds for his investigator's work on the case.[7] D.E. 322 at 7. Counsel represented to the court that his investigator was still

---

[6]   The evidence at trial supported the government's position that the search was obtained with the consent of Davette Simmons who regularly stayed at the apartment rented by Senegal's girlfriend, Tesse Rolland. D.E. 186-1, p. 13. The testimony of the officers at trial that they found no evidence of Senegal's presence at the apartment diminishes his current argument that he had standing to assert a privacy interest because of his status as a regular overnight guest.

[7]       MR. PODOLSKY: My suppression issue, from a defense standpoint, I think it would be really closer to the -- more of the gun issue than DNA. I've done some further -- I've done some investigation of the DNA and I don't know how tenable that position is, but I'm still working on the gun issue. I notified the Government of -- that I'm looking at the gun issue. They know that may be on the horizon.
                              *        *        *        *
MR. PODOLSKY: On the DNA issue. The gun issue is separate.
MAGISTRATE JUDGE: I understand. Go ahead.
MR. PODOLSKY: But I am looking at that issue and I have -- Mr. Senegal have discussed his position on that, you know, but, of course,

talking to witness, including Davette Simmons who was in county jail.[8] At the pretrial conference on July 6, 2007, counsel represented to the court that he may be filing the motion to suppress and might have to file it after the deadline if his motion for continuance of the July 2006 trial date was not granted.[9]

---

> there's issues we can prove and ones we can't prove. I have to proceed, accordingly, with what I've got.
>
>        *     *     *     *
>
> MR. PODOLSKY: If I may, with regard to some of Mr. Senegal's remarks, I mean -- I mean, this is a large case, as Your Honor well knows. There's several counts of widely varying criminal activity. And I'm looking at everything and I have to make some decisions, as the Court well knows, what are legitimate uses of our resources and what aren't and what are merit -- you know, what issues lack merit and what don't. And I understand that Mr. Senegal and I have a disagreement on that but, you know, I have to make the -- as I told him -- I have to make the calls what I think is in his best interest and what the issues are that I think we can best -- what issues are best brought before the jury.

Id. at 8, 12, 16-17.

[8]     MR. PODOLSKY: There's one other issue regarding what I mentioned about the witness in Galveston County jail. There's a -- DeVett Simmons is in Galveston County Jail and Investigator Davis has talked to other -- this is in regards to the possession of a firearm by a felon count. And we expect she's going to give us information regarding the search. That has yet to be -- regarding whether she gave consent to search the house, you know, it's my opinion that Mr. Senegal has a standing interest in the place where the gun was located and recovered, that has, you know, there are – people have told us that's what they expect her to say. We have not yet specifically talked to her yet because we have to coordinate with her lawyer on the state charges, which we have contacted and he's agreeable.

D.E. 322 at 6-7.

[9]     MAGISTRATE JUDGE: Then the only other thing that I had that was pending was this motion for additional time to file additional motions, but I think that time's run out. So I'm going to deny that. Although you did mention that there might be some sort of a motion that you felt compelled to file, Mr. Podolsky, I thought about a

Based upon counsel's discussion with the Magistrate Judge, counsel investigated the basis of any proposed motion to suppress before concluding that he did not wish to file one. "Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]" <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003) (quoting Strickland, 466 U.S. at 690–91)). "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." <u>Green v. Johnson</u>, 116 F.3d 1115, 1122 (5th Cir. 1997); <u>Garland v. Maggio</u>, 717 F.2d 199, 206 (5th Cir. 1983) (citing <u>Fitzgerald v. Estelle</u>, 505 F.2d 1334 (5th Cir. 1975); <u>Daniels v. Maggio</u>, 669 F.2d 1075 (5th Cir. 1982)). Senegal has not met his burden to demonstrate that counsel's decision not to  file a motion to suppress fell below professional standards. This claim is without merit.

---

suppression issue of some kind?

MR. PODOLSKY: Right. And I think that that has -- that will come to pass. I think that, given within the last week the interviews that we've done with some witnesses, there is going to be a legitimate suppression issue with regard to one of the counts in the indictment.

MAGISTRATE JUDGE: Okay. And how do you anticipate that's going to be handled since the case is set for trial Monday morning at 8:30?

MR. PODOLSKY: I have another issue that was filed. That was another reason why the continuance was -- was filed.

MAGISTRATE JUDGE: Okay. All right. So is it your belief then that if the continuance is granted, that motion'll be filed. If not, it's not going to be filed? Or is it going to be filed just so it's there so the effort shows that you filed or what?

MR. PODOLSKY: If the motion is granted, then we'll absolutely file it. If the motion is not granted, I supposed I will file it anyway. And deal -- take the -- take the heat when it comes.

MAGISTRATE JUDGE: All right.

<u>Id.</u> at 11-12.

### 3.   *Counsel's failure to investigate Mason's alleged mental illness*

Senegal claims that Tony Mason was a paranoid schizophrenic, that counsel should have investigated Mason's mental health before trial and cross-examined Mason regarding his mental illness. Senegal claims that the government's discovery indicated that Mason told a government polygraph examiner that he was diagnosed with paranoid schizophrenia. Senegal supports his claim by referencing the government's discovery. The page redacted Mason's name, but Senegal states that he figured out that the person in the report was Mason. The polygraph examination of Mason took place six weeks before Mason was shot.

On June 29, 2007, a week or so before trial began,[10] the federal Magistrate Judge held a hearing with Senegal and defense counsel on funds for experts and on *pro se* motions Senegal filed. D.E. 322. During the hearing, Senegal told the Magistrate Judge that,

> DEFENDANT SENEGAL: One thing else, Your Honor.
> THE COURT: Yes.
> DEFENDANT SENEGAL: Tony Mason when he took a test, he took a test and he made the comment that he was paranoid schizophrenic to the tester that was testing him. And I would like to have his medical records subpoenaed, if my lawyer hasn't brought that up to the Court.
> THE COURT: Okay. Have you talked to your lawyer about that?
> DEFENDANT SENEGAL: No. I've talked to him but -- I wrote him in a letter, but I don't know what he's done.

Id. at 18. Counsel was present for this discussion. Id., p. 1.

Counsel states in his affidavit that he "had no information or disclosure from the Government that Tony Mason had any kind of significant mental illness at the time of the

---

[10]   Trial began on July 9, 2007.

relevant offenses that warranted further investigation or inquiry." D.E. 401 at p. 2. Senegal's affidavit filed with his Reply claims that he told counsel before trial that Mason was known in the community to be paranoid schizophrenic and Mason received government assistance for his mental illness. Senegal's claim is supported in part by his statements to the Magistrate Judge before trial.

For Senegal to succeed on his claim of ineffective assistance on this ground, he is required to "allege with specificity what the [allegedly omitted] investigation would have revealed and how it would have altered the outcome of the trial." United States v. Green, 882 F.2d 999, 1003 (5th Cir.1989). Senegal fails to make the required showing, as he does not specifically allege how further discovery of Mason's mental state would have altered the outcome of his trial. See Green, 882 F.2d at 1003.

Senegal implies that Mason's testimony would have either been excluded by the Court or distrusted by the jury if Mason was confirmed to be a paranoid schizophrenic. Mason's testimony was corroborated in almost every detail by other witnesses.[11] Even if counsel had cross-examined Mason regarding his alleged mental illness and the jury disregarded Mason's

---

[11]  Mason's testimony that he picked up Senegal, York and Winn after the robbery of the credit union was corroborated by an eyewitness. Other witnesses tied Mason to York's phone that was left in Mason's car. Franklin and Winn also testified that Senegal was involved in the robbery of University Federal Credit Union. Dwayne Lakeith Joseph testified that he was involved with Senegal and York in planning the robbery of the University Federal Credit Union. D.E. 328, p. 700. Joseph further testified he was with York and Senegal when they talked about Mason being able to identify them as the robbers, and that Mason and others might be problems for them. D.E. 327, pp. 631-33. Joseph agreed with York and Senegal to shoot Mason, but the night of the shooting, Joseph and York had an argument on the way to find Mason. As a result of that argument, Joseph got out of the car and left York and Senegal. D.E. 328, p. 700. The next morning, York told Joseph about Mason's shooting and the robbery of Adrian DeVault. Id., p. 701. Days later, Senegal admitted to Joseph that he and York robbed DeVault the night Mason was shot. Id., p. 703-04.

testimony, the jury still would have had ample evidence to convict Senegal on all counts. As a result, Senegal has not demonstrated prejudice from counsel's failure to investigate Mason's alleged mental illness. Counsel's failure to investigate Mason's alleged mental illness is harmless because the outcome of the trial would not have changed.

4. *Counsel's failure to object to sentence that exceeded the statutory maximum*

Senegal claims that his sentence for violation of 18 U.S.C. § 924(c) exceeded the statutory maximum. He further claims that his counsel at sentencing failed to object and that failure constituted ineffective assistance of counsel. This claim is also without merit.

Counts Three and Seven charged Senegal with "knowingly us[ing], carry[ing] and brandish[ing] one or more firearms during and in relationship to a crime of violence . . . in violation of Title 18, United States Code, Section 924(c)(1)(A) and 2." D.E. 108, p. 6, 8. Subsection 924(c)(1) provides as punishment a mandatory consecutive term of imprisonment of *not less than 7 years* imprisonment. Senegal was sentenced to life terms for both Counts Three and Seven.

The Fifth Circuit examined the statutory language in 924(c)(1)(A) and held the language "plainly sets forth a minimum, rather than a maximum. We have expressly rejected [defendant's] interpretation in previous decisions, noting that by using the 'no less than' language, 'Congress has implicitly authorized district courts to impose sentences . . . in excess of seven years and up to a maximum of life imprisonment.'" United States v. Whitehead, 257 Fed. App'x. 777, 784 (5th Cir., Dec. 11, 2007) (per curiam) (designated unpublished) (citing United States v. Affleck, 861 F.2d 97, 98 (5th Cir. 1988)). Senegal's life sentence does not exceed the statutory maximum.

22

Furthermore, Senegal represented himself at sentencing. D.E. 382 at 21-23. Senegal may not now complain that he, acting as his own counsel, provided ineffective assistance. Senegal's claims on this issue are without merit.

**D.  Complaint that Judge Kent Should Have Recused Himself**

Senegal claims that Judge Kent should have recused himself and his failure to do so violated Senegal's right to due process. Senegal alleges that Judge Kent was under investigation for misconduct and attended a hearing in front of a committee of the Judicial Council on June 8, 2007, a month before Senegal's trial began. Senegal does not state who was investigating Judge Kent's actions, other than the Judicial Council of the Fifth Circuit Court of Appeals, or how those investigations affected his trial.

Judge Kent's cases were reassigned on August 23, 2007, five weeks after the conclusion of Senegal's trial, by order of the undersigned who was then the Chief Judge of the Southern District of Texas. On December 20, 2007, the Judicial Council of the Fifth Circuit Court of Appeals issued an Order acknowledging that there was an on-going judicial investigation into allegations of misconduct against Judge Kent, but there was no indication of criminal wrong doing at that time. In the December 2007 Order, Judge Kent agreed not to hear any cases in which the government was a party. Docket No. 07-05-351-0086, In re Complaint of Judicial Misconduct Against United States District Judge Samuel B. Kent Under Judicial Conduct and Disability Act of 1980, December 20, 2007.

Senegal did not raise recusal of Judge Kent on appeal. Where a defendant fails to raise an issue in his criminal proceedings, that issue is procedurally barred from consideration in § 2255 proceedings. See United States v. Lopez, 248 F.3d 427, 433 (5th Cir. 2001); United

23

States v. Kallestad, 236 F.3d 225, 227 (5th Cir. 2000). A district court may consider a defaulted claim only if the petitioner can demonstrate either cause for his default and actual prejudice or that he is actually innocent of the crime charged. Bousley v. United States, 523 U.S. 614, 622 (1998); United States v. Jones, 172 F.3d 381, 384 (5th Cir. 1999).

Senegal attempts to explain his failure to raise this claim earlier by stating, "Movant knew that Judge Kent was under investigation for something by the Fifth Circuit, but the proceedings were not made public until later." Senegal was not sentenced until April 2008, by which time he was aware of the investigation of Judge Kent. See D.E. 217 (Senegal's motion in December 2007 for hearing in Judge Kent's absence) and D.E. 256 (Senegal's motion complaining of alleged bias by Judge Kent). Senegal could have raised the issue of recusal or disqualification on appeal, but he did not do so.

The result of Senegal's failure to raise the issue on appeal is procedural default because he has not shown cause and prejudice. Thus, Senegal's claim that Judge Kent should have recused himself is not properly before the Court. United States v. Lumbreras-Amaro, 627 F. Supp. 2d. 752, 761 (S.D. Tex. 2008) (finding claims barred for failure to demonstrate cause); United States v. Vela, 2007 WL 268376 at * 3 (S.D. Tex., Jan. 25, 2007) (dismissing claims not raised previously).

If Senegal's claim regarding Judge Kent's recusal was not procedurally barred, it would still be without merit. Senegal's failure to state facts related to his case, other than broad allegation of presumptive bias, does not state a constitutional violation. Senegal has not provided the kind of detail that would be required for a motion to recuse, nor has he stated any personal bias or prejudice as a ground for recusal. "[O]nly in the most extreme of

24

cases does the Due Process Clause require disqualification of a judge." <u>Public Citizen, Inc.</u>

<u>v. Bomer</u>, 274 F.3d 212, 217 (5th Cir. 2001). For the "extreme case," a party must show that

the judge has a "direct, personal, pecuniary interest in reaching a conclusion against him in

his case." <u>Id.</u> Senegal has not alleged such a basis for recusal or disqualification. Conclusory

allegations on critical issues in a § 2255 proceeding are insufficient to raise a constitutional

issue. <u>Woods</u>, 870 F.2d at 288 n. 3; <u>see also</u> <u>Jones</u>, 614 F.2d at 82 (failure of movant to state

specific facts, "is insufficient to state a constitutional claim.").

### E.    Evidentiary Hearing

The Court denies Senegal's motion for an evidentiary hearing (D.E. 417) because the

motion, the files and records of the case conclusively demonstrate that he is not entitled to

relief. 28 U.S.C. § 2255(b).

### V.   CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas

corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28

U.S.C. § 2253(c)(1)(A). Although Senegal has not yet filed a notice of appeal, the § 2255

Rules instruct this Court to "issue or deny a certificate of appealability when it enters a final

order adverse to the applicant." Rule 11, § 2255 Rules.

A COA "may issue. . . only if the applicant has made a substantial showing of the

denial of a constitutional right."  28 U.S.C. § 2253(c)(2). "The COA determination under

§ 2253(c) requires an overview of the claims in the habeas petition and a general assessment

of their merits." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. <u>United States v. Jones</u>, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon <u>Slack</u>, 529 U.S. at 483-84).

As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reasons would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Slack</u>, 529 U.S. at 484 (emphasis added).

Based on the above standards, the Court concludes that Senegal is not entitled to a COA on any of his claims. That is, reasonable jurists could not debate the Court's resolution of his claims, nor do these issues deserve encouragement to proceed. <u>See</u> <u>Jones</u>, 287 F.3d at 329.

## VI.  CONCLUSION

For the foregoing reasons, Senegal's motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 (D.E. 382) is DENIED. Senegal's motion to amend his § 2255 motion (D.E. 414) is GRANTED. His motion for an evidentiary hearing (D.E. 417) is DENIED. He is also denied a Certificate of Appealability.

Ordered this 7th day of July, 2014.

_____
HAYDEN HEAD
SENIOR U.S. DISTRICT JUDGE

27